WYLIE H. VILAS, as Assignee of FRANK L. FROMENT, Appellant, *v.* THE ALLENTOWN ROLLING MILLS, Respondent.

*Estoppel — in favor of a corporation or its selling agent — general objection — when not available on an appeal — objection to the judge's charge.*

Where a corporation and its selling agent are the same, so far as a person with whom they are engaged in buying and selling merchandise is concerned, the receipt by such person of an evidence of indebtedness from either the corporation or its selling agent, does not operate as an estoppel in favor of the other.

A general objection is not available upon an appeal if it appears that, had a special objection been taken upon the trial, the error could have been there remedied.

Upon an appeal from a judgment in favor of the defendant, the plaintiff cannot present in the appellate court for the first time the objection that the charge of the trial judge was erroneous, on the ground that it referred to a defense not pleaded.

APPEAL by the plaintiff, Wylie H. Vilas, as assignee of Frank L. Froment, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 17th day of May, 1894, upon the verdict of a jury rendered after a trial at the New York Circuit, and also from an ordered entered in said clerk's office on the 15th day of June, 1894, denying the plaintiff's motion for a new trial made upon the minutes.

*R. J. Mahon,* for the appellant.

*J. B. Leavitt,* for the respondent.

VAN BRUNT, P. J.:

This action was brought by Frank L. Froment to recover of the defendant a balance alleged to be due on account of goods, wares and merchandise claimed to have been sold by him to the defendant.

The answer admitted the purchase of a small amount of goods from Froment and alleged payment for the same, and for a further defense it alleged an agreement between the said Froment, as the agent of the Blandon Iron and Steel Company, and the defendant, whereby it was agreed that the defendant should sell pig iron to the said Blandon Iron and Steel Company, and that the company should sell bar iron to the defendant, and that such sales should offset each other so far as the amounts thereof should go, and that by virtue of said agreement it had an offset against the amount alleged by the plaintiff to be due in the sum of $950.02.

Prior to the trial of the action the plaintiff, as assignee of Froment, was substituted as plaintiff herein. Upon the trial evidence was given upon the part of the plaintiff and of the defendant, and the question of the agreement alleged in the answer was submitted to the jury, who returned a verdict in favor of the defendant. From the judgment thereupon entered and from an order denying a motion for a new trial this appeal is taken.

The main ground on which error is alleged upon this appeal is that the alleged fact that Froment was the principal in the sales was established beyond intelligent doubt and that the verdict is against the weight of evidence. Upon a consideration of the evidence in this case, instead of such evidence establishing the fact that

Froment was the principal in these sales beyond intelligent doubt, we are of the opinion that the jury could have come to no other conclusion than that Froment and the Blandon Iron and Steel Company, so far as these transactions were concerned, were one and the same thing.

It is to be noticed that Mr. Froment was a stockholder of this company, that the treasurer of the company was a clerk in his office, and that the letters upon the part of Froment and the Blandon Iron and Steel Company were written from New York indiscriminately, sometimes being signed by the company, per Tilton, and sometimes being signed in the name of Froment by Tilton.

It appears upon an examination of this testimony that Froment sold all the output of the Blandon Iron and Steel Company, and throughout his correspondence with the defendant in respect to this matter he speaks of the Blandon Iron and Steel Company's mills as " our mills " and " my mills."

It is true, when asked in respect to the expression " for my mills," Froment said that he did not mean the Blandon mills.  And when asked the question : " By your mills you meant the Blandon mills ? " he answered, " I cannot say now ; that is two years ago."  But it is manifest that this witness is entirely disingenuous, and that he knew perfectly well that at the time of writing the letter in question he meant the Blandon mills.  The agreement alleged in the answer is stated to have been made on the 30th of April, 1891.

It was admitted by Froment that some of the conversation in reference to the bar iron manufactured by the Blandon mills and the pig iron to be sold by the defendant was had.  He was asked : " Q. Do you mean to say that in that conversation with Mr. Allison (who represented the defendant) there was nothing said between you and him upon the subject that the bar iron which his company should buy either from you or the Blandon Company should be offset or paid for by iron which his company should sell to the Blandon Company ?  A. No, sir ; no such conversation.  Q. Do you mean to say that you never told Mr. Allison, in any way, that you and the Blandon Company were willing to take in payment for iron which you or the Blandon Company would sell to the Allentown Company, pig iron in return ?  A. I cannot.  Q. Will you swear you never said to Mr. Allison that you were willing to take in

payment for iron which you or your company might sell to the defendant, pig iron, which they might deliver to the Blandon Company? A. I could not answer that question. Q. Was there no such conversation or talk? A. Conversation such as I have stated here. Q. State it over again. A. I told Mr. Allison if he did not wish to pay me the money he might ship iron up to Blandon and he did, and the Blandon Company paid me for that. Q. Did you tell him he might ship iron up to the Blandon Company for the iron he owed you? A. Yes. Q. Was it not talked of between you, that for any iron he might order from you, he might ship iron to the Blandon Company? A. No, sir; that depended upon whether we wanted iron. Q. Did not you tell him you would send him iron from the Blandon Company and accept iron from his company in payment? A. Yes, to a certain extent, if the price was right. Q. Was it not understood between you as honorable men that the iron which one company would send to the other company would be offset by the iron the other company would send? A. No, sir."

In another part of the cross-examination the witness was asked this question: "Do you mean to say at the interview April 30th, 1891, you did not say to him you would give him best refined iron and take from him pig iron in return? A. I said if he filled his orders for bar iron. Q. Will you tell the jury whether you said you would accept in payment the pig iron? A. Yes. Q. In payment of the bar iron which you sold him? A. I sold him none then. Q. Do you understand my question? A. Yes. He did not know whether he wanted any. Q. Did not you tell him if he would want it you would accept pig iron in payment? A. Yes, if he would give it to me. Q. Did not he always give it? A. No; sent cash several times, and sent checks sometimes."

This evidence shows beyond question that the statement which the witness had sworn to at first, that he had had no conversations with Allison with respect to this matter, was absolutely untrue, and known by him to be untrue. And it is not at all remarkable that the jury, in view of the testimony of this witness as to what took place on the 30th of April, 1891, should have placed no confidence in his evidence thereafter. It is manifest from the correspondence and from the testimony, that Froment and the Blandon Iron and

Steel Company considered themselves as one and the same concern. He sold the whole of their output and received a commission of two and one-half per cent upon such sales. Orders came from and through him, and it was·he who conducted all the business of the corporation. In view of the nature of all the evidence it would be difficult to say that Froment was not acting on behalf of the Blandon Iron and Steel Company at this time; and if he was not so acting, then the jury have found, and the evidence clearly supports the finding, that there was an understanding between Froment and the defendant that for all the goods it received of the Blandon mills manufacture it might repay the same by the delivery of pig iron to the Blandon Company.

It appears from the evidence that, for the alleged balance of $950.02 claimed as an offset, the defendant had accepted a note of the Blandon Company which had not fallen due at the time of the failure of said company, and it is claimed upon the part of the plaintiff that the acceptance of this note and Froment's payment to the company after such acceptance created an estoppel against the alleged set-off. We are unable to see the force of this position. Froment and the Blandon Company being the same so far as this defendant is concerned, the receipt of an evidence of indebtedness from either would not operate as an estoppel in favor of the other. The ground of the estoppel is based upon the claim, which at one time in his testimony Froment asserted, that he only assented to the delivery of pig iron to the Blandon Company as long as he was paid therefor by the Blandon Company. But· in his testimony he was compelled to recede from this position, and he had to admit that he told Mr. Allison, the representative of the defendant, that if he wanted, he would accept pig iron in payment so long as he would give it to him, which pig iron was to be delivered to the Blandon Company — a feature in the transaction which is entirely inconsistent with any theory of estoppel.

It is perfectly clear from the whole of this evidence that the defendant believed that it was dealing with the Blandon Company; that Froment was merely its selling agent, and that Froment knew such to be the fact. And such *was* the fact, Froment representing to the defendant at the time of the making of this arrange-

ment that these mutual offsets were to take place, and claiming no individual interest in the transaction.

It is true that in some parts of the correspondence he speaks of himself, and if these letters stood alone they might support the claim that Froment was the principal. But when all are taken together it is plainly manifest that Froment was only the agent of the Blandon Company, selling perhaps under a *del credere* commission. There is no pretense but that he had a right to represent the Blandon Company, and until it became necessary to separate their interests for the purpose of avoiding the claims of offset, there seems to have been no method of determining whether Froment was acting for himself or the Blandon Company in any of these transactions. It was of no moment, then; but when the necessity arose Froment was equal to the emergency, and swore that he had no arrangement in regard to the payment for Blandon iron by the defendant's pig iron, and then was compelled to admit that such an arrangement existed.

The only other point which it is necessary to consider is the alleged error in the judge's charge. The court charged as follows: "Even if the plaintiff's assignor, Froment, did own the goods in question, and was the person who sold them to defendant, yet, if this was done pursuant to any arrangement between said Froment and defendant's treasurer, Allison, whereby it was agreed that defendant should sell pig iron to the Blandon Company and the Blandon Company should sell bar iron to the defendant, and that such sales should offset each other so far as the amount thereof should go, then the defendant would be entitled in all fairness and honorable dealing to offset its claim against the Blandon Iron & Steel Co. against the claim of Froment for the goods in suit."

This portion of the charge was excepted to, and it is claimed to have been substantially error, inasmuch as it refers to a defense not pleaded and not even suggested in the answer; that the only contract alleged was stated as having been made by the Blandon Company, and that there was not an intimation in any part of defendant's case that Froment acted as principal, or made any contract as principal, and that if any evidence in the case could be construed as tending to prove an individual contract by Froment to give bar iron to the defendant, in consideration of defendant sending pig iron to

the Blandon Company, it would not be available under the pleadings, and that no motion was made to amend the answer or to make it conform to any alleged proof.

In answer to this objection it is sufficient to say that there was ample evidence in this case to show that if Froment was acting in his own behalf in the sales of Blandon iron, an arrangement had been made that such sales were to be repaid by the furnishing by the defendant of pig iron to the Blandon Company, and that such evidence was submitted to the jury without objection, and in such submission the question in regard to the pleadings is nowhere mentioned, and in the exception taken to the charge no statement is made that the issue was not presented by the pleadings. As the court would have had the right to have made the pleadings conform to the proof, no such objection can now be taken. The plaintiff cannot upon appeal first raise a question of this description. The objection, if it had been pointed out upon the trial, could have been remedied without difficulty; and where such is the case a general objection is not available upon appeal.

But even under the pleadings we think the charge was correct. The plaintiff alleged that Froment made the agreement. It is true that the defendant alleged that he made it as agent of the Blandon Company. But if this agreement was not made on behalf of the Blandon Company by Froment as its agent he made it on his own behalf, and the only question was whether it was made by him individually or in his representative capacity; and so far as the purpose of this offset is determined it was entirely immaterial so long as the agreement was made.

It seems to be clear, therefore, that the objection in respect to the pleading is not well taken, and no error was made in the submission of the case to the jury nor in the course of the charge.

The judgment and order appealed from should be affirmed, with costs.

O'BRIEN and PARKER, JJ., concurred.

Judgment and order affirmed, with costs.